UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------
IN RE:

    PETER D. THOMPSON, SR.                 CASE NO. 06-32622
    VIRGINIA P. THOMPSON

                            Debtors                 Chapter 7
--------------------------------------------------------
APPEARANCES:

| | |
|---|---|
| BODOW LAW FIRM, PLLC | JAMES F. SELBACH, ESQ. |
| Attorneys for Debtors | Of Counsel |
| 1925 Park Street | |
| Syracuse, New York 13208 | |
| | |
| HANCOCK & ESTABROOK, LLP | DANIEL B. BERMAN, ESQ. |
| Attorneys for City of Syracuse | Of Counsel |
| 1500 MONY Tower I | |
| P.O. Box 4976 | |
| Syracuse, New York 13221-4976 | |
| | |
| CITY OF SYRACUSE LAW DEPARTMENT | LEE JOHN PLAVOUKOS, ESQ. |
| Attorneys for City of Syracuse | Of Counsel |
| 233 East Washington Street | |
| 300 City Hall | |
| Syracuse, NY 13202 | |

Hon. Stephen D. Gerling, Chief U.S. Bankruptcy Judge

**MEMORANDUM-DECISION, FINDINGS OF FACT,
CONCLUSIONS OF LAW AND ORDER**

Under consideration by the Court is a motion seeking actual damages and attorneys' fees ("Motion") filed by Peter D. Thompson, Sr. and Virginia P. Thompson ("Debtors") on January 3, 2007.[1] Debtors allege that the City of Syracuse Department of Water ("City") violated the

---

[1] While no statutory basis is cited in the motion, it is presumed that the motion is filed pursuant to § 524(a)(2) and § 105(a) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-

discharge injunction imposed pursuant to their Order of Discharge, dated November 9, 2006. The Debtors ask this Court to find the City in contempt of that order. The Debtors further ask this Court to exercise its power to take necessary action to enforce its orders by awarding actual damages of $10,000 and attorney's fees of $2,000 to the Debtors. Along with the Motion, the Debtors' attorney, James Selbach, Esq., filed a supporting affirmation ("Selbach Affirmation 1"), dated January 3, 2007. A Response by the City was filed by the on February 1, 2007. Attached to the City's Response were the Declaration of Deborah Somers ("Somers Declaration") and the Declaration of Daniel B. Berman ("Berman Declaration."). The Debtors' attorney filed a Supplemental Affirmation ("Selbach Affirmation 2") in support of the Motion on February 5, 2007.

The Motion was heard on February 6, 2007, at the Court's regular motion term in Syracuse, New York. Following oral argument, the Court reserved decision and allowed the filing of additional memoranda of law through February 28, 2007. The Debtors' attorney submitted an additional letter ("Selbach Letter") to this Court on February 9, 2007. The City's attorney responded in a letter ("Berman Letter") to this Court on February 28, 2007.

**JURISDICTIONAL STATEMENT**

This Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1) and (b)(2)(O).

---

1532 (the "Code").

# FACTS

The Debtors filed a petition with this Court under chapter 13 of the Code on September 3, 2004.  Almost two years later, on July 27, 2006, they voluntarily converted their case to a case under chapter 7 of the Code.  A Discharge was granted in the chapter 7 case on November 9, 2006, and notice of this Discharge was served on all creditors by first class mail on November 11, 2006 by the Bankruptcy Notice Center, located in Herndon, Virginia (Berman Declaration ¶ 3, Ex. 1).

According to the City, this notice was received by their Utility Billing Department three days later on November 14, 2006.  (Somers Declaration ¶ 3.)  That same day, the City issued a shutoff notice to the Debtors, requesting payment of $1,823.24, the accrued post-petition, preconversion arrearage on the Debtors' account.  (Selbach Affirmation 1 at ¶ 5, Ex. A; Response ¶ 6; Somers Declaration ¶ 3, Berman Letter.)  The City's uncontested claim is that they initially interpreted the Discharge Order to include only the pre-chapter 13 petition arrears.  (Response ¶ 6; Somers Declaration ¶ 3.)  The City further asserts, without dispute or evidence to the contrary, that once it realized the error, it corrected it with no further action required by the Debtors; service was not actually interrupted, and no further attempts at collection occurred.  (Response ¶ 6; Somers Declaration ¶ 4.)

# ARGUMENTS

The Debtors contend that the City violated the Discharge Order that this Court issued on

4

November 9, 2006, by issuing a notice on November 14, 2006, that water service would be shut off at the Debtors' home if they did not pay a sum of $1,823.24. This amount, which was to be paid by December 18, 2006, represented the chapter 13 post-petition, pre-conversion to chapter 7 arrearage on Debtors' account with the City. The Debtors argue that this Court should exercise its enforcement powers under Code § 105(a) and award actual damages of $10,000 and attorney's fees of $2,000 as sanctions for the violation of this Order.[2]

The City raises two significant objections to the Motion. First, the City argues that there should be no sanctions awarded for what it contends was a technical and inadvertent violation of the Discharge Order, lacking bad faith or willful misconduct. Furthermore, if this Court does find the City's action to be a sanctionable offense, the City argues that the Debtors have alleged no basis upon which actual damages resulting from the violation can be determined and, therefore, they have no basis for recovery.

## DISCUSSION

A discharge order granted pursuant to Code § 524(a) permanently enjoins creditors from any further attempts to collect a debt which is included in that order. *See* 11 U.S.C. § 524(a)(2). Violation of this injunction is punishable by contempt. *In re Cruz*, 254 B.R. 801, 816 (Bankr.

---

[2] The Debtors originally argued Code §§ 524(a) and 105(a) as alternative bases for awarding the requested remedy. (Selbach Affirmation 2 ¶¶ 3-4.) However, later correspondence consolidated this argument into using the powers granted under Code § 105(a) to enforce the injunction granted under Code § 524(a). (Selbach Letter) As will be explained, this interpretation is consistent with the case law; the Court will, therefore, evaluate Debtors' argument under that standard.

S.D.N.Y. 2000) (citing *In re Mickens*, 229 B.R. 114, 118 (Bankr. W.D.Va. 1999)). While assigning this broad injunctive authority, the Code includes no specific mechanism for enforcement of this injunction. However, the Code does authorize the courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." *See* Code § 105(a). As one court noted, "[a] court should exercise with caution its inherent contempt powers under section 524 and rely, when appropriate, on its statutory contempt powers under section 105." *In re Faust*, 270 B.R. 310, 315 (Bankr. M.D. Ga. 1998).

A court may sanction a creditor that willfully violates the discharge injunction of Code § 524 and order a creditor to compensate the debtor for all expenses incurred as a result. *See Cruz*, 254 B.R. at 816 (citing *Mickens*, 229 B.R. at 118-19). Initially, it is the Debtor's burden to establish by clear and convincing evidence that the City willfully violated the Discharge Order. *In re Emmons,* 349 B.R. 780, 793 (Bankr. W.D. Mo. 2006). This requires a showing by the Debtor that the City had notice of the Discharge Order and intentionally took actions which violated the injunction. *Id.* 793; *Faust*, 270 B.R. at 315.

Furthermore, when a creditor's violation is both willful and indicative of bad faith or vexatious intentions, the court may also award attorneys' fees, as well as punitive damages. With respect to the former, the general rule in courts of the United States is that a prevailing litigant is not entitled to collect attorney's fees from the loser. *In re Watkins,* 240 B.R. 668, 678 (Bankr. E.D.N.Y. 1999)(citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). However, exceptions to this rule do exist, both statutorily and judicially crafted. Although there is no statutory exception for violations of a discharge order, judicially created exceptions apply when (1) a defendant willfully disobeys a court order, and (2) a losing party acts in bad faith,

6

vexatiously, wantonly, or for oppressive reasons. *See id.* at 678-79 (citing *In re Walker*, 180 B.R. 834, 849 (Bankr. W.D. La. 1995); *In re Brantley*, 116 B.R. 443, 449 (Bankr. D. Md. 1990)).

In *Watkins*, a pre-petition debt of $5,780.12 owed to the creditor was discharged in the debtors' bankruptcy. *Watkins* 240 B.R. at 672-73. After the discharge, the creditor contacted the debtors to tell them that, despite their bankruptcy, the creditor was still interested in serving the debtors' future lending needs. *Id.* at 673. After falling behind on their mortgage, the debtors did contact that creditor to inquire about a new loan. *Id.* They were told that any amount that they wished to borrow would be in addition to the amount of the discharged debt. *See id.* Left with no options besides the potential loss of their home, the debtors signed a note in the amount of $8,253.51 at twenty-five percent interest in exchange for $4,000 of new money, without entering into any reaffirmation agreement for the discharged debt. *Id.* at 674. Predictably, the *Watkins* debtors began to fall behind on their payments. *Id.* After collection attempts began, the debtors reopened their chapter 7 case in order to initiate an adversary proceeding against the creditor. *Id.* At the time that the debtors reopened their case, they had repaid $5,354.10 on their $4,000 loan. *Id.*

Finding that the creditors had willfully disobeyed the discharge order and acted in bad faith, the *Watkins* court awarded both actual damages and attorney's fees to the debtor.[3] *See id.* at 683. First, the court found that crafting a post-petition loan to include repayment of a portion of the discharged debt was a willful violation of the discharge injunction. *Id.* Then, the court

---

[3] The court also discussed the higher standard for punitive damages and, finding that threshold crossed, awarded punitive damages to the debtor. Because no request for punitive damages has been made in the instant Motion, there is no need for this Court to discuss those damages.

7

found that, by taking advantage of the debtors' woeful financial predicament to persuade them to sign a note for a sum greater than that advanced, the creditor acted in bad faith. *Id.* Accordingly, the court awarded the debtors both the actual damages of the amount they had already overpaid on the post-petition loan and attorney's fees incurred in litigating the issue. *See id.*

On the other hand, the courts have refused to award sanctions for technical and unintended violations of a discharge order. *See Cruz*, 254 B.R. at 816. In *Cruz*, a creditor, who had not been listed in the debtors' bankruptcy petition, filed suit in state court for repayment of a pre-petition car loan eighteen months after the debtors received a discharge. *Id.* at 803. After the debtors' attorney forwarded documentation of the discharge to the creditor, it pursued its claim anyways, indicating that it never received notice of the bankruptcy. *Id.* A default judgment was issued for $8,747.27, and the debtors moved to vacate it three months later. *Id.* Without seeking additional assistance from an attorney, the debtors eventually entered into a settlement agreement under which they agreed to pay a total of $7,500 in monthly installments of $200 with no interest. *Id.* at 803-04. Subsequently, the debtors' attorney filed an application to reopen their case and add the creditor to their schedules . *Id.* at 804.

Despite the collection and legal process in violation of the discharge order,[4] the *Cruz* court, applying the same standards as the *Watkins* court, held that sanctions were not appropriate. *See id.* at 816. While it found that the collection actions and subsequent settlement were willful acts, the court found no evidence of bad faith. *See id.* Rather, it found that both parties had

---

[4] Although the debtors failed to list the creditor in their schedules on their initial filing, the court held that the particular debt was still included in the discharge as a matter of law because this was a "no-asset" case. *See id.* at 807-12.

believed the agreement to be valid at the time it was drafted because both parties had a good faith belief that the debt had not been discharged. *Id.* Because "'[s]anctions for contempt are not appropriate for technical and unintended violations of a debtor's right,'" the court merely cancelled the settlement agreement without imposing any sanctions on the creditor. *See id.* at 816-17 (quoting *In re Bowling*, 116 B.R. 659, 664 (Bankr. S.D. Ind. 1990)).[5]

In the matter before this Court, the notice mailed to the Debtors indicating an intent to shut off their water was mailed on the same day that the notice of the Discharge Order was received. The Debtors have failed to establish that this was anything but an inadvertent action on the part of the City, which it quickly corrected once it understood that not only could it not collect on any pre-chapter 13 debt, it also could not seek to collect on the debt incurred post-petition, pre-conversion to chapter 7. The Debtors' service was never interrupted and no further actions were ever taken by the City to collect the debt. In addition, there is no evidence of any damages suffered by the Debtors.

Furthermore, an award of attorney's fees is also inappropriate because there is no evidence of bad faith by the City. In this way, this case is analogous to *Cruz* and distinguishable from *Watkins*. Because the City was originally mistaken as to its right to collect the post-petition pr-conversion debt and they corrected their error without action by the Debtors, there is no evidence to support a finding of bad faith, just as the court found in *Cruz*. In *Cruz*, the court concluded that

---

[5] The Court notes that a factual finding necessary to impose sanctions for a willful violation of the discharge injunction is significantly different than that required for a violation of the automatic stay. *See* Code § 362(h). In this Circuit all that is required to find a willful violation of the stay is that the offending creditor had notice of the bankruptcy filing and that it acted in violation of the resultant stay. *See Crysen/Montenay Energy Co.,* 902 F.2d 1098 (2nd Cir. 1990). Bad faith actions by the creditor is not a necessary element of proof in order to award actual damages and attorney's fees.

9

the creditor had a good faith belief that they were entitled to recover the discharged debt from the debtor, based on the debtor's failure to initially include the creditor on the schedules. *See Cruz*, 254 B.R. at 816. According to the Somers, a Utility Billing Supervisor employed by the City, the shutoff notice, which was sent to collect the post-petition arrearage, was sent in the belief that the Debtors' discharge applied only to the pre-chapter 13 petition arrearage.[6] Ms. Somers goes on to declare that the mistake was quickly communicated to the billing department, which took no further collection actions. Because the *Cruz* creditors acted in the belief that they were entitled to collect from the debtor, the court found no bad faith on the part of the creditors, characterizing their violation as "technical and unintended." *See id.* at 816-17. Because the City seems to have acted in a similar belief that they were entitled to recover and immediately ceased their collection activities when they were corrected, there is likewise no apparent bad faith in this case. Rather, the violation was technical and unintended. Consequently, just as the court in *Cruz* held that an award of damages and/or attorney's fees was inappropriate, damages and/or attorney's fees are not appropriate here. *See id.* at 817.

Based on the foregoing, it is

ORDERED that Debtors' motion to hold the City of Syracuse in contempt is denied and, it is further

ORDERED that the Debtors' request for an award of damages and attorney's fees is

---

[6] If this case were never converted from Chapter 13 to Chapter 7, this belief would in fact have been accurate. In an unconverted Chapter 13 case, all post-petition arrears would be collectable. With the conversion to Chapter 7, the post-petition, pre-conversion arrears became included in Debtors' discharge. *See* 11 U.S.C. § 348 (d). The City attributes the initial confusion and issuance of the erroneous shutoff notice to this fact, and there has been no other evidence produced to cast doubt on this contention.

likewise denied.

Dated at Utica, New York

this 21st day of August 2007

/s/   Hon. Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge